John S. Wirt (PHV Applied For)
WIRT & WIRT, P.A.
5 Calhoun Avenue, Unit 306
Destin, Florida 32541
Tel: (847) 323-4082
Fax: (314) 431-6920

*Attorneys for Plaintiff*
*Big Noise Sports, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BIG NOISE SPORTS, INC., an Illinois corporation,<br><br>      Plaintiff,<br><br>  - against -<br><br>BEIJING MEDIA NETWORK, a company organized under the laws of the Peoples Republic of China; and BEIJING UNIVERSAL MEDIA CULTURE COMMUNICATION CO., LTD., a company organized under the laws of the Peoples Republic of China,<br><br>      Defendants. | CASE NO. 20-cv-6439 _____<br><br>**COMPLAINT**<br>**WITH JURY DEMAND** |

Plaintiff BIG NOISE SPORTS, INC., an Illinois corporation, by and through its attorneys Wirt & Wirt, P.A., as and for its Complaint against Defendants BEIJING MEDIA NETWORK, a company organized under the laws of the Peoples Republic of China and BEIJING UNIVERSAL MEDIA CULTURE COMMUNICATION CO., LTD., a company organized under the laws of the Peoples Republic of China, states and alleges as follows:

**JURISDICTION AND VENUE**

  1.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that it is an action between a citizen of the United States and citizens of a foreign state and the matter in controversy exceeds the sum of US$75,000, exclusive of

interest and costs.

2.  Venue lies in this District pursuant to 28 U.S.C. § 1391. Among other things, the agreement at issue in this action specifically provides that any action shall be brought only in New York and the parties irrevocably submitted to the jurisdiction of the United States District Court for the Southern District of New York and waived any objection to venue in this Court, including, *forum non conveniens*.

## THE PARTIES

3.  Plaintiff Big Noise Sports, Inc. ("Plaintiff" or "BNS") is an Illinois corporation with its principal place of business in Winnetka, Illinois.

4.  On information and belief, Defendant Beijing Media Network is a company organized under the laws of the Peoples Republic of China ("BTV") with its principal place of business in Beijing, China.

5.  On information and belief, Defendant Beijing Universal Media Culture Communication Co., Ltd is a company organized under the laws of the Peoples Republic of China ("BUMCCC") with its principal place of business in Beijing, China.

## FACTUAL ALLEGATIONS

6.  BNS and Defendants entered into a Personal Appearance Agreement dated as of August 8, 2018, a true and correct copy of which is attached hereto as Exhibit A (the "PA Agreement").

7.  The PA Agreement in general called for BNS to deliver to BTV the services of a celebrity for a sports event being televised by BTV on October 7, 2018.

8.  Paragraph 1(b) of the PA Agreement provides, in part, that,

> BUMCCC shall pay BNS the sum of Three Hundred Thousand U.S. Dollars (US$300,000) (the "Fee"). The Fee shall be paid as follows: (i) BUMCCC shall pay BNS One Hundred Thousand U.S. Dollars (US$100,000) upon

execution hereof and shall constitute a deposit (the "Deposit") . . . , and (ii) BUMCCC shall cause the balance of the Fee (i.e., Two Hundred Thousand U.S. Dollars (US$200,000)) (the "Balance") to be deposited in escrow with the Escrow Agent no later than September 1, 2018. The Deposit and the Balance shall be wired transferred by BUMCCC to the Escrow Agent via wire transfer.

9. On August 17, 2018, after BNS did not receive the US$100,000 Deposit, BNS' counsel sent a formal demand to Defendants putting Defendants on notice of their breach of the PA Agreement and demanding the immediate payment of the Deposit. Notwithstanding BNS' counsel's demand, Defendants failed to pay any monies to BNS in accordance with Paragraph 1(b) of the PA Agreement.

10. Paragraph 3 of the PA Agreement further provides, in part, that,

> Each of BNS and BTV/BUMCCC (the "Indemnifying Party") further acknowledges that the other party (the "Indemnified Party") is entering into this Agreement in reliance upon the warranties, representations and covenants herein, and each Indemnifying Party agrees to indemnify, defend and hold the Indemnified Party and its affiliates harmless from and against any and all liability, cost, or expense, including reasonable outside attorney's fees, the Indemnified Party or its affiliates may sustain or incur as a result of the breach or inaccuracy of any of said warranties, representations and covenants by the Indemnifying Party.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**

11. Plaintiff BNS repeats and realleges Paragraphs 1 through 10 of the Complaint as though fully set forth herein and incorporate the same by this reference.

12. On or about August 20, 2018 and thereafter, Defendants breached the PA Agreement by not paying BNS any of the monies due it under the PA Agreement.

13. As a direct and proximate result of the breach of contract by Defendants as herein alleged, Plaintiff has suffered damages in an amount to be proven at trial, but believed to be in excess of One Million (US$1,000,000) U.S. dollars.

## SECOND CLAIM FOR RELIEF
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

14. Plaintiff BNS repeats and realleges Paragraphs 1 through 13 of the Complaint as though fully set forth herein and incorporates the same by this reference.

15. Implied into every contract is a covenant of good faith and fair dealing wherein and whereby the parties agree to act at all times in good faith towards each other.

16. Plaintiff reasonably expected that Defendants would deal with it fairly, equitably, and in good faith.

17. Plaintiff's expectations were brought about and intended by Defendants as a result of, *inter alia*, the language in the PA Agreement and by representations made by Defendants and their agents.

18. Defendants breached their obligation to act in good faith by not paying BNS the monies due it under the PA Agreement.

19. The acts and omissions of the Defendants set forth herein were committed in bad faith, intentionally and/or with conscious and reckless disregard of Plaintiff's rights.

20. As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered damages in an amount to be proven at trial, but believed to be in excess of One Million (US$1,000,000) U.S. dollars.

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

(a) On Plaintiff's First and Second Claims for Relief, for general and special damages in an amount to be proven at trial, together with interest thereon at the legal rate;

(b) For all costs of suit;

(c) For post judgment interest at the maximum legal rate;

(d) For such other and further relief as deemed just and proper;

(e) For reasonable attorneys' fees; and

(f) Plaintiff hereby demands a jury trial.

Dated: August 13, 2020

/s/ John Wirt
John S. Wirt, Esq. (PHV Applied For)
WIRT & WIRT, P.A.
5 Calhoun Ave., Suite 306
Destin, FL 32541
Tel: (847) 323-4082
Fax: (314) 431-6920
mail@wirtlawfirm.com

*Attorneys for Plaintiff*
*Big Noise Sports, Inc.*

## PERSONAL APPEARANCE AGREEMENT

**THIS PERSONAL APPEARANCE AGREEMENT** (the "Agreement") is made and entered into as of August 8, 2018 by and among Beijing Media Network, a company organized under the laws of the People's Republic of China ("BTV"), Beijing Universal Media Culture Communication Co., Ltd., an agent of BTV, with offices at 1101, 7-201 Wangxin Huayuan Garden, Lize West Street, Chaoyang District, Beijing, China ("BUMCCC"), Big Noise Sports, Inc., an Illinois corporation, with offices at 770 Bryant Avenue, Winnetka, Illinois 60093 USA ("BNS"), and the law firm of Wirt & Wirt, P.A., a Florida professional association, as escrow agent with offices at 5 Calhoun Avenue, Suite 306, Destin, Florida 32541 USA ("Escrow Agent").

**WHEREAS**, BTV desires that BNS provide the services of Mike Tyson ("Tyson") as a performer with respect to an MMA event (the "Event") scheduled to take place on October 7, 2018 in Beijing, China which will be televised by BTV and underwritten by BUMCCC, all upon and subject to the terms and conditions hereinafter set forth.

**NOW, THEREFORE**, in consideration of the mutual promises set forth herein, the parties agree as follows:

1. Event. (a) BNS shall deliver the services of Tyson to perform the following activities (the "Activities") which will be recorded and televised by BTV in connection with the Event as follows:

| Date | Activity |
|---|---|
| **October 5, 2018** (USA PST) | Tyson and his representatives (the "Tyson Group") will depart the U.S. for Beijing, China. Flight HU7970 LAS PEK 0100 0505+1 |
| **October 6, 2018** (China Time) | The Tyson Group arrives in Beijing, China. The Tyson Group will be met at the airport and taken to the Host Hotel to rest and recover from jet lag.<br><br>**Part 1**: Boxing training, Personal VCR shooting<br>Duration: 15:00-18:00   3 hours<br>Contents:   Guide and training 6 Chinese fighters to make preparation and VCR shooting |
| **October 7, 2018** (China Time) | **Part 2**:   Pre-competition Interview<br>Duration: 16:00-18:00   no more than 2 hours<br>Contents:   Give pre-competition assessment on the Chinese fighters based on their performance in training. |

1




| | |
|---|---|
| | **Part 3**: Competition<br>Duration: 19:00-22:00, no more than 3 hours<br>Contents: Being the convener and leader of the American Team, Tyson shall organize the competition with the Chinese Team and give professional comments on each bout. The length of each comment shall range between 30 seconds and 90 seconds. (Tyson shall not compete in the Event in person)<br><br>Competition rules: Total six bouts, each bouts has 3 rounds and each round lasts for 5 minutes.<br>Contestants: Team American vs. Team China in six separate bouts, including five men's bouts and one women's bout.<br><br>**Part 4**: Post-competition interview<br>Duration: 22:00-23:00<br>Duration of interview to be between 30minutes and 1 hour<br>Contents: Tyson will be interviewed and provide his professional comments on the Event and the performance of the Chinese fighters. Any one-on-one interview shall be conducted by a male interviewer. |
| <u>**October 8, 2018**</u><br><u>**(China Time)**</u> | Time for personal arrangement, no particular arrangements. Tyson and his representative will depart from hotel @23:00 to airport to return to the U.S.<br><br>October 9th Flight HU7967 PEK LAS 01:45-23:00-1 |
| <u>**October 8, 2018**</u><br><u>**(USA PST)**</u> | Arriving in USA |

BNS agrees that Tyson will perform the Activities in a professional and business-like manner, similar to his other personal appearances. BTV shall notify BNS by September 1, 2018 of the exact start time for Part 1 of the Activities.

   (b)  As full compensation for the rights herein granted to BTV and for the all services and the performances required of and to be rendered by Tyson, and

2

upon the condition that the Activities are completed in accordance with and subject to the provisions hereof, BUMCCC shall pay BNS the sum of Three Hundred Thousand U.S. Dollars (US$300,000 ) (the "Fee").  The Fee shall be paid as follows:  (i) BUMCCC shall pay BNS One Hundred Thousand U.S. Dollars (US$100,000) upon execution hereof and shall constitute a deposit (the "Deposit") (i.e., for BNS to hold the dates and not accept other offers for Tyson for the time period covered by this Agreement), and (ii) BUMCCC shall cause the balance of the Fee (i.e., Two Hundred Thousand U.S. Dollars (US$200,000)) (the "Balance") to be deposited in escrow with the Escrow Agent no later than September 1, 2018.  The Deposit and the Balance shall be wired transferred by BUMCCC to the Escrow Agent via wire transfer to the following bank account:

| | |
|---|---|
| **Receiving Bank:** | North Shore Community Bank<br>1145 Wilmette Ave.<br>Wilmette, IL   60091<br>USA |
| **SWIFT Code:** | NSCTUS44 |
| **Beneficiary/Credit to:** | Wirt & Wirt IOLTA Trust Account |
| **Beneficiary Account #:** | 3300039266 |

In the event that BNS does not receive notification from the Escrow Agent as provided below that the Fee was deposited into escrow, BNS, in addition to its other rights and remedies hereunder, shall have the right to terminate performance of this Agreement and retain the Deposit.  The Fee will be the total payment made and owing to BNS for all services rendered by Tyson as provided herein.  BTV and BUMCCC will have no other financial obligations to BNS and Tyson for the Event. The Fee shall be paid without deduction of any taxes or other amounts.

(c)  The Fee (less the Deposit) shall be disbursed by the Escrow Agent upon the Escrow Agent's receipt of an e-mail in accordance with the notice provisions in Paragraph 15 below from BNS notifying Escrow Agent that Tyson arrived in China for the Event, unless the Event has been cancelled.  If the cancellation of the Event is not attributable to BNS or Tyson (e.g., the cancellation does not result from the injury or illness of Tyson), BNS shall retain the Deposit and no further payment shall be due hereunder.  However, if the cancellation of the Event is attributable to BNS or Tyson, the Deposit paid to BNS will be returned by BNS to BUMCCC within 15 days of BUMCCC's request therefor.  In either event, upon cancellation of the Event, Escrow Agent shall return all monies in escrow to BUMCCC.

All disbursements to a party shall be via wire transfer to a U.S. bank account designated by the applicable party.  Notwithstanding any other provision of this Agreement, Escrow Agent shall notify each of parties via e-mail in accordance with the notices provision below upon its receipt (i) of the Fee and (ii) of each Disbursement Request.

3

Escrow Agent shall not disburse any funds until 2 days after providing such notification. If during the 2 days following such notification, any party objects (an "Objection") in writing to the disbursement of the Fee, the Escrow Agent shall not disburse any funds unless and until it receives joint instruction from the parties or a non-appealable order from a court of competent jurisdiction, at which time it shall disburse the funds to the parties as their interests may appear, it being understood that in the event Escrow Agent receives an Objection, Escrow Agent shall have the right (i) to retain the Fee until it receives such joint direction as to the disbursement of said funds or (ii) to file an interpleader action with a court of competent jurisdiction in Florida and deposit the Fee with such court, less the costs and expenses Escrow Agent incurs in connection with filing such interpleader action. The parties further understand and agree (and Escrow Agent shall have the right to rely thereon) that (i) the duties and responsibilities of the Escrow Agent hereunder shall be determined solely by the express provisions of this Agreement, and no other or further duties or responsibilities shall be implied except for the duty to act in good faith, (ii) the Escrow Agent shall not be liable for any action taken or omitted by it in good faith (iii) the Escrow Agent may consult with counsel of its own choice and, at its option, may act as its own counsel in connection herewith, (iv) each of BTV and BNS hereby agree to indemnify the Escrow Agent for, and to hold it harmless against, any loss, liability or expense, arising out of or in connection with this Agreement and carrying out its duties hereunder, including, without limitation, reasonable outside attorneys' fees and other costs and expenses of defending itself against any claim of liability, provided, however, that the foregoing provisions of this clause shall not affect the rights and remedies of BTV and BNS as against each other and (v) anything in this Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for special, indirect or consequential loss or damage of any kind whatsoever (including, but not limited to, lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.

(d) BTV shall be responsible for arranging and paying the costs and expenses for the necessary Chinese visas for the Tyson Group, if required, and one (1) first class and one (1) business class round-trip airline tickets from Las Vegas to Beijing, China (and two business class round-trip airlines tickets from Chicago, Illinois to Las Vegas (to coincide with the other tickets from Las Vegas to Beijing) and from Las Vegas to Beijing, China); provided, however, if the airline does not offer first class to Beijing from Las Vegas, BTV may substitute a fourth business class ticket for the first class ticket provided that the business class seat reclines 180° to a flat bed; provided, further, that the two representatives of the Tyson Group departing from Chicago may elect to return at a date later than October 8, 2018 and may fly direct on their return from Beijing to Chicago. Additionally, BTV shall provide five-star hotel accommodations (the "Host Hotel") to the Tyson Group as follows: one suite and one standard room adjacent to such suite and five other standard rooms. BTV shall also provide ground transportation (with English speaking drivers and recent model luxury vehicle) for the Tyson Group while in China. BNS agrees to provide BTV with the

names of the representative traveling with Tyson and their departure airports (and return dates, with respect to the two representatives departing from Chicago) within 5 days of BTV's request. It is expressly understood, however, that BTV shall have no obligation for the cost of long-distance telephone calls, alcoholic beverages, entertainment or similar expenses, all of which shall be borne solely by the Tyson Group, and they each shall be required to provide satisfactory credit or cash security to the Host Hotel for such personal expenses. In addition, BTV will pay each of Tyson and one other member of the Tyson Group (as determined by BNS) a per diem totaling RMB6,000. A BTV representative shall deliver the cash per diems to John Wirt upon his arrival to the Host Hotel.

2. <u>Live Performance Rights to Event</u>. (a) It is understood that BTV's rights shall include all rights, title and interest in and to the Activities performed by Tyson, including the right to authorize others to record, videotape and film the Activities and distribute the same live and on a delayed basis by television and streaming and any and all other media, including, the right to use the name, approved image and likeness of Tyson in connection with the Activities and the Event.

(b) BTV shall have the right to assign, license or transfer any or all of the rights granted to it hereunder to any person, firm or corporation provided BTV and BUMCCC shall remain liable for all their obligations under this Agreement. BNS grants (and shall cause Tyson to grant) to BTV all rights required to stage the Event, sell tickets of admission to the Event to the public and to otherwise engage in all activities customarily associated with the promotion of a professional MMA event, without any additional compensation, except for the Fee specified in this Agreement.

(c) BNS grants (and shall cause Tyson to grant) to BTV the exclusive worldwide rights to distribute and exhibit (and authorize others to distribute and exhibit) the audio/visual recordings of the Event in perpetuity subject to the terms and conditions of this Agreement, including, without limitation, approval rights, without any additional compensation, except for the Fee specified in this Agreement. The rights include the unrestricted right to broadcast, telecast, photograph, record or otherwise produce the Event and the events immediately preceding and following the Event (and between rounds) in any and all media in or by any manner, method or devise (now known or hereafter developed) including, but not limited to, the unlimited and unrestricted right to telecast the Event by means of live or closed circuit television, paid, cable, subscription or toll television, films, tapes and streaming for exhibition in all media, whether for theatrical exhibition or for sale, lease or license, including audio and audiovisual cassettes and discs, and the unlimited right to commercialize any or all of the foregoing, and to obtain copyright or similar protection where available in the name of BTV or BTV's nominee, all in such manner as BTV in its sole discretion shall determine. Notwithstanding anything contained in this Agreement to the contrary, the use of Tyson's name and/or likeness in recordings of the Event, as provided above, shall be limited to "in-context" uses. All of Tyson's rights not expressly granted hereunder shall be reserved by BNS.

5

(d) BNS grants (and shall cause Tyson to grant) to BTV the right to use in any media the name, photograph or other likeness and biographical material of Tyson, solely for the purpose of marketing and exploiting the Event, including banners, buttons, posters and all similar products, without any additional compensation, except the Fee specified in this Agreement. The rights granted herein include Tyson' personal publicity and privacy rights with respect to the Activities and the Event; provided, however, that such rights shall not include commercial and merchandising rights using Tyson's name, image and likeness, such as, T-shirts, caps, clothing, and other similar souvenir items; provided, however, that solely during the live Event, BTV and its licensees shall have the right to sell customary Event-related merchandise solely at the arena where the Event is taking place that contains Tyson's name and approved image and/or likeness. Without limiting the generality of the foregoing, the designs for any and all merchandise, as described above, that contains Tyson's name and/or image and/or likeness shall be subject to BNS's prior written approval.

(e) BNS shall cause Tyson to cooperate reasonably and assist in publicizing, advertising and promoting the Event, including providing quotes, photographs and other marketing materials BNS and/or Tyson already possess. If requested by BTV, BNS will arrange for Tyson to shoot a 30 second to 60 second promotional spot on an Iphone or other similar device in which Tyson confirms that he is coming to China for the Event and that he is excited to see the bouts between his American Team and the Chinese Team. BTV shall provide a proposed script for Tyson for such spot, which script shall be subject to BNS's approval, such approval not to be unreasonably withheld or delayed, it being understood that Tyson shall not be required to follow such script but shall be free to *ad lib* as he sees fit provided that the substance of the proposed script is conveyed. In the event that BTV desires to shoot a professional spot in lieu of an Iphone spot, BNS will cooperate with BTV and arrange for Tyson to appear for 30 minutes to shoot such spot on a date, time and at a location designated by BNS in consultation with BTV, and in that event, such spot and all creative elements thereof shall be subject to BNS's approval, such approval not to be unreasonably withheld or delayed.

(f) Notwithstanding the foregoing, BTV hereby grants to BNS the irrevocable right to use (and to authorize others to use) worldwide customary video clips of the Activities in any and all media for the period commencing thirty (30) days after the Event and thereafter in perpetuity equal to three (3) minutes of the footage of the Activities, but excluding any footage of any of the bouts (the "Clip Rights"). The Clip Rights may be used solely in news programming, to publicize and promote future activities in which Tyson participates or the services of BNS or any of Tyson's affiliated companies, in connection with interviews in which Tyson may participate and in programming produced by or on behalf of BNS.

3. <u>Representations, Warranties and Covenants</u>. Each of BNS/BUMCCC and BTV represents, warrants and covenants to the other that the representing party owns or holds a valid contract and license for all rights granted hereunder, and that the representing party has the right to enter into this Agreement and the full right power and authority to perform all of its obligations hereunder. Neither party has heretofore entered into, and will not hereafter enter into, any contract, agreement or understanding, whether oral or written, which conflicts in any material respect with the provisions hereof or which purports to grant similar or conflicting rights to any person, firm or entity other than BNS or BTV/BUMCCC, as the case may be, or which would or might interfere with BNS' and BTV/BUMCCC's full and complete performance hereunder or the free and unimpaired exercise by BNS and BTV/BUMCCC of any of the rights granted to them under this Agreement. Each of BNS and BTV/BUMCCC has acquired or shall acquire all rights necessary to its grant of rights as provided herein; and the performance and exercise by a party of its obligations and rights hereunder will not give rise to any claim whatsoever, including, without limitation, for compensation, remuneration, damages, liability, charge or assessment, or for equitable relief, injunction, court order or that of any governmental or administrative authority against the other party or any person or entity exercising rights by or through such other party. Each of BNS and BTV/BUMCCC (the "Indemnifying Party") further acknowledges that the other party (the "Indemnified Party") is entering into this Agreement in reliance upon the warranties, representations and covenants herein, and each Indemnifying Party agrees to indemnify, defend and hold the Indemnified Party and its affiliates harmless from and against any and all liability, cost, or expense, including reasonable outside attorney's fees, the Indemnified Party or its affiliates may sustain or incur as a result of the breach or inaccuracy of any of said warranties, representations and covenants by the Indemnifying Party.

4. <u>Other Activities</u>. Except as otherwise expressly set forth herein, in no event shall any of the Activities be revenue generating activities related to Tyson directly, including, without limitation, autograph, glove or merchandise signings or photo sessions, meet and greets or television or radio appearances or where persons pay to be admitted to the activity or where BTV receives revenue arising from or related to such activities, it being understood that the only revenue generating activities arising from or related to Tyson' appearance shall be at the actual Event, it being understood that the only revenue generating activities arising from or related to Tyson's appearance shall be at the actual Event. In the event that BTV desires Tyson's participation in any such additional activities, the parties shall negotiate in good faith a separate additional fee for Tyson's participation therein, but unless the parties reach such agreement, there shall be none.

5. <u>Postponement/Termination</u>. If any of the Activities or the Event are prevented from taking place on the scheduled date by reason of any act of God, fire, flood, riot, war, public disaster, unavailability of the arena, or for any other reason not within the affected party's control, including, without limitation, travel disruptions, family emergencies (such as the death or illness or injury (requiring hospitalization) of a spouse, child or grandparent) or the injury or illness of Tyson (as certified by a duly-licensed physician), then either party shall have the right to terminate this Agreement and upon such termination, neither party shall have any further rights or obligations hereunder.

6. Entire Agreement. This Agreement sets forth the entire understanding and agreement of the parties hereto regarding the subject matter hereof, and supersedes all prior agreements, statements, negotiations and understandings (whether written or oral, express or implied) among the parties hereto regarding such subject matter. This Agreement may only be modified by a writing signed by both parties.

7. Governing Law/Forum Selection. Each of the parties irrevocably submits to the jurisdiction of the United States District Court in the Southern District of New York ("New York Federal Court") over any action or proceeding arising out of or relating to this Agreement and hereby irrevocably agrees that all claims in respect of such action or proceeding may be heard and determined only in such New York Federal Court. Alternatively, if the New York Federal Court shall not have jurisdiction over the subject matter of the action or proceeding, then the action or proceeding may be brought in any State Court of New York having jurisdiction over the subject matter ("New York State Court"), and each of the parties hereby irrevocably submits to the jurisdiction of the New York State Court. As an alternative method of personal service, each of the parties irrevocably consents to the service of any and all process in any such action or proceeding by the e-mailing of copies in accordance with the notice provisions of this Agreement. Each of the parties agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any manner provided by law. Each of the parties further waives any objection to venue in the New York Federal Court or New York State Court and any objection to any action or proceeding in such New York Federal Court or New York State Court on the basis of forum non conveniens. Each of the parties further agrees that any such action or proceeding brought hereunder shall be brought only in a New York Federal Court or New York State Court. Nothing in this paragraph shall affect the right of a party to serve legal process in any other manner permitted by law. This Agreement shall be governed, construed and enforced in accordance with the substantive law of contracts of the State of New York and without regard to New York choice of law principles or conflicts of law principles.

8. Independent Contractors. Each of the parties and Tyson are independent contractors with respect to one another, and nothing herein shall create any association, partnership, joint venture or agency relationship between or among them. Each party shall be fully responsible for all persons employed by it in connection with its performance hereunder, including, without limitation, for all compensation, withholding taxes, workers' compensation insurance or other required payments in connection with such employees, except as otherwise specifically and explicitly provided herein and the other party shall have no liability or responsibility in connection with such persons.

9. Severability. Nothing contained in this Agreement shall require or be construed as to require the commission of any act contrary to any law, rule or regulation of any governmental authority, and if there shall exist any conflict between any provision of this Agreement and any such law, rule or regulation, the latter shall prevail and the pertinent provision or provisions of this Agreement shall be curtailed, limited or eliminated to the extent necessary to remove such conflict, and as so modified, this Agreement shall continue in full force and effect.

10. Waiver. No waiver by any party of any breach or default hereunder shall be deemed to be a waiver of any preceding or subsequent breach or default. All waivers

8

must be in writing, specify the breach or default concerned and be signed by the party against whom the waiver is sought to be enforced. The payment of any monies by any party shall not be deemed a waiver. This Agreement and the rights and obligations of the parties hereunder shall inure to the benefit of and be binding upon the permitted assigns, successors and affiliated entities of the parties hereto.

11. <u>Confidentiality</u>. Neither party shall disclose to any third party (other than its employees and agents, in their capacity as such, on a need-to-know basis), any information with respect to the financial terms and provisions of this Agreement except: (i) to the extent necessary to comply with law or the valid order of a court of competent jurisdiction, in which event the party seeking disclosure shall so notify the other party as promptly as practicable (if possible, prior to making such a disclosure) and shall afford such party the opportunity to seek confidential treatment of such information, (ii) as part of normal reporting or review procedure to its banks, auditors and attorneys and similar professionals, provided that such banks, auditors and attorneys and similar professionals agree to be bound by the provisions of this paragraph, (iii) in order to enforce its rights pursuant to this Agreement, and (iv) to comply with contractual obligations. BNS and BTV shall jointly determine the timing and content of and make any press announcements and other public statements regarding this Agreement.

12. <u>Further Assurances</u>. Each of the parties shall execute any and all additional documents or instruments necessary or desirable to effectuate the provisions of this Agreement. No party hereto shall take any action or fail to take any action which action or failure shall frustrate the purposes of this Agreement and the benefits contemplated hereby.

13. <u>Counterparts/Facsimile</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument. Facsimile and/or email signatures shall be as effective as originals.

14. <u>Notices</u>. Any notice required or desired to be given hereunder shall be in writing and sent by e-mail, addressed as follows:

| To BTV/BUMCCC: | To BNS: |
|---|---|
| E-mail: zenger50@263.net | E-mail: mail@bignoisesports.com |
| **To Escrow Agent:** | |
| E-mail: legalnotices@wirtlawfirm.com | |

All such notices shall be deemed given when e-mailed to the respective parties at the e-mail addresses indicated above or to such other new e-mail address a party notifies the other parties of in writing.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the day and year first above written.

| | |
|---|---|
| BIG NOISE SPORTS, INC. | BEIJING UNIVERSAL MEDIA CULTURE COMMUNICATION CO., LTD. |
| | 北京环球影音文化传播有限公司 |
| WIRT & WIRT, P.A. | |
| By: _____ | By: _____ |
| | 签署人: _____ |

10